**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **LORETTA GRAY, AS ADMINISTRATOR OF THE ESTATE OF CAMERON GRAY, DECEASED**<br>1735 N. Cliff Street<br>Alexandria, VA 22301<br><br>    Plaintiff,<br><br>    v.<br><br>**MINUTECLINIC DIAGNOSTIC OF VIRGINIA, LLC**<br>One CVS Drive<br>Woonsocket, RI 02895<br><br>    <u>Serve upon Registered Agent</u>:<br>    CT Corporation System<br>    4701 Cox Road, Suite 285<br>    Glen Allen, VA 23060-6808<br><br>    Defendant. | Civil Action No._____<br>JURY TRIAL DEMANDED |

<u>**COMPLAINT**</u>
(Medical Malpractice)

Comes now the Plaintiff, Loretta Gray, as Administrator of the Estate of Cameron Gray, Deceased, by and through Catherine D. Bertram and Bertram & Murphy, and pursuant to the Rules of this Court moves for judgment against the Defendant, MinuteClinic Diagnostic of Virginia, L.L.C.

<u>**Parties**</u>

1.      Plaintiff Loretta Gray, the wife of the decedent, obtained the certification of qualifications of the Estate of Cameron Gray for purposes of prosecution of a civil action for

personal injury and/or death by wrongful death lawsuit on July 18, 2023, in the Circuit Court of Alexandria.

2. Plaintiff Loretta Gray is a resident of Alexandria, Virginia.

3. Plaintiff Loretta Gray was married to Cameron Gray at the time of his death on April 1, 2023.

4. Defendant MinuteClinic Diagnostic of Virginia, L.L.C. is a limited liability company with a principal place of business in Woonsocket, Rhode Island.

5. Defendant MinuteClinic Diagnostic of Virginia, L.L.C. employed Tammy Nguyen, N.P.

6. At all times relevant to her actions and omissions in her interactions with Mr. Gray, Tammy Nguyen, N.P. was acting in the course of scope of her employment with Defendant MinuteClinic Diagnostic of Virginia, L.L.C. .

7. A patient-health-care-provider relationship existed between Mr. Gray and MinuteClinic Diagnostic of Virginia, L.L.C., and its employees, agents, and servants.

8. A patient-health care provider relationship existed between Mr. Gray and Defendant's employee and agent, Tammy Nguyen, N.P.

9. As such, Defendant MinuteClinic Diagnostic of Virginia, L.L.C. and Tammy Nguyen, N.P. , owed a duty to Mr. Gray to conform their conduct to the applicable standard of care.

10. At all relevant times, Defendant MinuteClinic Diagnostic of Virginia, L.L.C., by and through its employees, agents, and servants, provided medical care and treatment to patients in the Commonwealth of Virginia, including Mr. Gray.

11. At all times of which Plaintiff complains, Defendant held itself out to the public as hiring and offering health care providers at their Minute Clinics who possessed the degree of knowledge, ability, and skill possessed by reasonably competent healthcare providers practicing under the same or similar circumstances as those involving Mr. Gray.

## Jurisdiction and Venue

12. Jurisdiction of the Court is proper under 28 U.S.C. §1332 because the dispute is between citizens of different states (complete diversity of citizenship) and the amount in controversy exceeds $75,000.

13. Venue is proper under 28 U.S.C. §1391 because the Alexandria Division is where the decedent and his wife lived at the time of the events. The negligence at issue occurred at the CVS Minute Clinic located in Alexandria, Virginia.

## Factual Background

14. Mr. Gray presented to Defendant's CVS Minute Clinic in Alexandria, Virginia on March 30, 2023, with a sore throat and respiratory complaints.

15. Mr. Gray was seen by Tammy Nguyen, NP, at 11:10 a.m. on March 30, 2023.

16. Mr. Gray had a fever of 101 degrees and his pulse was 104. He also reported a sore throat and cough that had been bothering him for three days which was non-productive and became worse when he was lying down.

17. NP Nguyen noted Mr. Gray had a sore throat. NP Nguyen's physical exam was positive for a finding of impacted cerumen in Mr. Gray's left ear.

18. While at the CVS Minute Clinic a SARS-COV-2 rapid result antigen test was performed with a negative result. No other lab work was ordered or performed.

19. NP Nguyen did not order any blood or a rapid strep test.

20. NP Nguyen did not order a chest x-ray.

21. NP Nguyen's assessment included a differential diagnosis of acute bronchitis (unspecified organism), acute upper respiratory infection, and observation for suspected exposure to other biological agents was ruled out.

22. NP Nguyen's plan was for Mr. Gray to begin taking two medications, Tessalon 100 mg, three times a day as needed, and Advil 400 mg every six hours as needed for moderate pain or fever. NP Nguyen recommended Mr. Gray take warm steamy showers prior to bedtime, to keep the head of his bed elevated to prevent postnasal drainage, saline to his nose as needed, humidifier by his bedside, to rest and drink fluids, warm beverages with honey and lemon.

23. Additionally, NP Nguyen noted if Mr. Gray had no improvement in 3-5 days, he was to return to the Defendant's Minute Clinic or his primary care provider for further evaluation.

24. Mr. Gray was not advised to proceed to an emergency room for a complete work up.

25. Less than 48 hours later, on April 1, 2023, Mrs. Gray was awakened at home by Mr. Gray's rough and abnormal breathing. Mr. Gray was alert and oriented when Mrs. Gray drove him to Inova Alexandria Hospital at approximately 5:32 a.m. that morning.

26. Mr. Gray was cared for by Tanvi Shirke, DO, in the Emergency Department on April 1, 2023. Dr. Shirke obtained Mr. Gray's health history from Mrs. Gray who was at the bedside. Mrs. Gray informed Dr. Shirke Mr. Gray's symptoms had begun approximately five days earlier with a cough and he was seen at the Minute Clinic a few days before.

27. Dr. Shirke's differential diagnosis for the etiology of Mr. Gray's condition upon arrival included infection/septic shock, acute heart failure, PE, stroke, and diabetic ketoacidosis/hyperosmolar hyperglycemic state. Stat lab work and imaging were ordered.

28. Tests for COVID and influenza A and B were all negative again.

29. Mr. Gray was sent for imaging. CT of the head was negative of any acute intracranial process. Imaging of the chest was negative for pulmonary embolism, but showed consolidating infiltrates in his bilateral lungs, multiple nodular densities, and a prominent right hilum. Mr. Gray was started on antibiotics, fluid infusions were held, pressor supportive medications were to be titrated, an insulin drip was initiated for his hyperglycemia, and targeted temperature management (TTM) was initiated.

30. Mr. Gray was admitted to the Medical ICU under the care of Trisana Cox, MD and Jessica Blakely, NP. Mr. Gray's was noted to be critically ill due to septic shock secondary to pneumonia.

31. Eric Reines, MD, an infectious disease specialist, consulted on Mr. Gray on April 1, 2023, at 1:06 p.m. Dr. Reines' assessment included PEA arrest, shock, neutropenia possibly due to sepsis. His recommendations included noting the appropriate cultures had been ordered.

32. Mr. Gray's condition continued to worsen throughout the day.

33. Mr. Gray died on April 1, 2023, at approximately 4:59 p.m.

34. Both sets of final blood culture results were available after Mr. Gray's death and were positive for Streptococcus pyogenes (Group A) and respiratory culture and gram stain final result was positive for heavy growth of staphylococcus aureus.

35. Mr. Gray had a common bacterial infection, often called strep throat, which is readily treatable with standard oral antibiotics when timely diagnosed.

36. Mr. Gray is survived by his wife Loretta Gray.

37. Mr. Gray was 51 years old and was working full-time as a radio producer at the time of his death.

## COUNT I: MEDICAL MALPRACTICE

38. Plaintiff incorporates all previous paragraphs as if fully stated here.

39. Defendant, as a retail health care entity and by and through Tammy Nguyen, Defendant's employee and agent, owed a duty to exercise that degree of skill, judgment, and care expected of reasonably acute care clinics and licensed health care providers, under the same or similar circumstances as those in this case.

40. Defendant, individually, and by and through Tammy Nguyen, breached the standard of care as follows:

   a. Failure to properly and thoroughly examine and assess Mr. Gray,

   b. Failure to timely diagnose, manage, evaluate, and refer Mr. Gray to an emergency department for additional testing and prompt diagnosis and treatment,

   c. Failure to test Mr. Gray for common bacterial infections,

   d. Failure to recognize the ominous signs of infection and sepsis and to timely advise Mr. Gray to proceed to the nearest emergency room on March 30, 2023,

   e. Failure to inform Mr. Gray of the risks and alternatives to going home without sufficient workup and without sufficient treatment,

   f. Failure to properly supervise and/or train NP Nguyen regarding the signs and symptoms of sepsis and/or SIRS,

   g. Failure to have criteria in place for NP Nguyen to timely diagnose and treat patients with signs and symptoms consistent with sepsis and/or SIRS, and

    h. Providing Mr. Gray with false assurances that his condition was minor and that it was safe to go home without further work up and treatment.

41. As a direct and proximate result of the breaches in the standard of care by Defendant individually and by and through NP Nguyen, Plaintiff's decedent Cameron Gray experienced conscious pain and suffering and died on April 1, 2023.

## COUNT II: SURVIVAL

42. Plaintiff incorporates all previous paragraphs as if fully stated here.

43. Defendant individually and by and through NP Nguyen, owed Plaintiff decedent a duty to exercise that degree of skill, judgment, and care expected of reasonably competent practitioners, agents, employees, apparent agents, and health care entities practicing under the same or similar circumstances as those involving Cameron Gray. Defendant, individually and by and through NP Nguyen, breached the standard of care as follows:

    a. Failure to properly and thoroughly examine and assess Mr. Gray,

    b. Failure to timely diagnose, manage, evaluate, and refer Mr. Gray to an emergency department for additional testing and prompt diagnosis and treatment,

    c. Failure to test Mr. Gray for common bacterial infections,

    d. Failure to recognize the ominous signs of infection and sepsis and to timely advise Mr. Gray to proceed to the nearest emergency room on March 30, 2023,

    e. Failure to inform Mr. Gray of the risks and alternatives to going home without sufficient workup and without sufficient treatment,

    f. Failure to properly supervise and/or train NP Nguyen regarding the signs and symptoms of sepsis and/or SIRS,

      g. Failure to have criteria in place for NP Nguyen to timely diagnose and treat patients with signs and symptoms consistent with sepsis and/or SIRS, and

      h. Providing Mr. Gray with false assurances that his condition was minor and that it was safe to go home without further work up and treatment.

44. Mr. Gray suffered conscious pain, injuries, mental anguish, and distress as well as death as a direct and proximate result of Defendant's negligence individually and by and through NP Nguyen.

WHEREFORE, Plaintiff requests judgment against Defendant, in the amount of $5,000,000 (five million dollars) to be determined by the evidence, applicable law, in all sums permissible in Virginia, to include pre- and post-judgment interest and costs, in all sums permissible in Virginia.

## COUNT III – WRONGFUL DEATH

45. Plaintiff incorporates all previous paragraphs as if fully stated here.

46. Defendant, individually and by and through NP Nguyen, represented to Mr. Gray, and to the public, that Defendant and its employees/agents possessed the degree of knowledge, ability, and skill possessed by reasonably competent healthcare providers practicing under the same or similar circumstances as those involving Mr. Gray.

47. Defendant, individually and by and through NP Nguyen, owed Plaintiff's decedent a duty to exercise that degree of skill, judgment, and care expected of reasonably competent practitioners, through its staff physicians, agents, employees, apparent agents, practicing under the same or similar circumstances as those involving Mr. Gray.

48. Defendant, individually and by and through NP Nguyen, breached the standard of care as follows:

    a. Failure to properly and thoroughly examine and assess Mr. Gray,

    b. Failure to timely diagnose, manage, evaluate, and refer Mr. Gray to an emergency department for additional testing and prompt diagnosis and treatment,

    c. Failure to test Mr. Gray for common bacterial infections,

    d. Failure to recognize the ominous signs of infection and sepsis and to timely advise Mr. Gray to proceed to the nearest emergency room on March 30, 2023,

    e. Failure to inform Mr. Gray of the risks and alternatives to going home without sufficient workup and without sufficient treatment,

    f. Failure to properly supervise and/or train NP Nguyen regarding the signs and symptoms of sepsis and/or SIRS,

    g. Failure to have criteria in place for NP Nguyen to timely diagnose and treat patients with signs and symptoms consistent with sepsis and/or SIRS, and

    h. Providing Mr. Gray with false assurances that his condition was minor and that it was safe to go home without further work up and treatment.

49. Mr. Gray died as a direct and proximate result of Defendant's negligence individually and by and through NP Nguyen.

50. Loretta Gray, as Ancillary Administrator for the Estate of Cameron Gray, deceased, has incurred expenses relating to the death and funeral of Cameron Gray as a direct and proximate result of Defendants' joint and individual negligence.

51. As a direct and proximate result of Defendants' negligence, by and through their agents and employees, Loretta Gray and any other beneficiaries have suffered sorrow and mental anguish, including loss of society, companionship, comfort, guidance, kindly offices, and advice of Cameron Gray, and reasonably expected lost services, protection, care, and assistance provided

by Cameron Gray, as well expenses related to his last hospitalization, funeral, and autopsy. Plaintiff seeks an award of all compensation and all other damages available pursuant to Code of Virginia § 8.01-52 or otherwise recoverable under Virginia law.

WHEREFORE, Plaintiff requests judgment against the Defendant in the amount of $5,000,000 (five million dollars) to be determined by the evidence, applicable law, to include pre- and post-judgment interest and costs, and all sums permissible in the Commonwealth of Virginia.

## JURY TRIAL DEMAND

A jury trial is hereby demanded by the Plaintiff on all claims.

Respectfully submitted,

BERTRAM & MURPHY

/s/ *Catherine Bertram*
Catherine "Katie" Bertram, VSB No. 96042
20 F Street, N.W., 7th Floor,
Washington, D.C. 20001
Telephone: 202-803-5800
Direct: 202-494-1924
Facsimile: 202-803-6814
katie@blg-dc.com
***Counsel for the Plaintiff***